DECISION JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court, Juvenile Division, judgment that adjudicated Elisha Cazad a dependent child and awarded her permanent custody to the Lawrence County Department of Job Family Services, Children's Division (DJFS).
 {¶ 2} Appellant Theo Cazad, Elisha's natural mother, raises the following assignments of error for review:
First assignment of error:
"The trial court erred in finding elisha cazad to be dependent."
Second assignment of error:
"The trial court's finding that the child cannot be placed with theo cazad within a reasonable time or should not be placed with her mother was erroneous and against the manifest weight of the evidence."
Third assignment of error:
"The trial court's finding that it was in the child's best interest to terminate parental rights was erroneous and against the manifest weight of the evidence."
Fourth assignment of error:
"The trial court's finding that elisha cazad could not be placed with her father because the provisions of R.C. 2151.414(E)(11) was erroneous, or, in the alternative, R.C. 2151.414(E)(11) is Unconstitutional as creating an illicit irrebuttable presumption."
 {¶ 3} After Elisha's October 23, 2003 birth, the hospital contacted DJFS concerning their intention to release Elisha and her mother. The next day, DJFS obtained an ex parte order of custody and on October 25, 2003 a DJFS caseworker took custody of Elisha from the hospital.
 {¶ 4} On October 27, 2003, DJFS filed a complaint that alleged Elisha to be a dependent child and sought permanent custody. At the conclusion of the shelter care hearing the trial court awarded Elisha's temporary custody to DJFS.
 {¶ 5} On January 8, 2004, the trial court held an adjudicatory hearing. At that time Elisha's father, Norman Lucas, raised a question as to Elisha's paternity. The court noted that at the time of Elisha's birth, Theo was married to Carl Cazad and because Ohio law creates a paternity presumption in Theo's husband, the court ordered the parties provide Carl notice of hearing. The court also directed the parties to submit to genetic testing. Subsequently, the genetic test report indicated that Norman is Elisha's father and excluded Carl from any possibility of paternity.
 {¶ 6} At the April 8, 2004 adjudicatory hearing, Theo and Norman denied the complaint's allegations and the trial court conducted an evidentiary hearing. The evidence revealed that Theo has had four other children (Elisha's older siblings) removed from her care because of unsanitary conditions and because Theo was unable to care for them. Specifically, Theo's children suffered from repeated lice infestations, her home was in disarray with overflowing trash cans and ash trays, an unflushed commode, and used feminine napkins lying strewn about the house. DJFS caseworker Randy Thompson testified that Theo's children were dirty and that on one visit to Theo's house a child answered the door while sucking on a used douche bottle.
 {¶ 7} Thompson testified that he attempted to teach Theo how to keep a clean home and that initially, Theo followed his written cleaning directions. When Theo lost the written directions, however, she stopped cleaning the home and the home again became filthy and unsuitable. Thompson then removed three of Theo's children in October 1999. Theo's fourth child was born in 2000 and DJFS removed that child from her custody soon after his birth.
 {¶ 8} DJFS Investigator Teneka Ferguson testified and read a 1999 Judgment Entry in which Theo voluntarily admitted to charges of neglect and dependency regarding her three oldest children. In 2000, Theo also voluntarily admitted to dependency charges regarding her fourth child. The trial court adjudicated all four children neglected and dependent and initially placed them in the custody of their father, Carl Cazad.[2]
 {¶ 9} Ferguson also testified that previously Norman, Elisha's father, had three children removed from his care. In 1981 a trial court found Norman's children to be neglected and dependent and awarded permanent custody to DJFS. Ferguson testified that from her investigation of the records, Norman's children were removed for neglect and physical abuse.
 {¶ 10} Ferguson further testified that she did not believe that Theo could become an adequate parent to Elisha within a reasonable period. In Ferguson's opinion too many risks exist to place Elisha in the care of her biological parents and adoption is in Elisha's best interest.
 {¶ 11} On May 3, 2004, the trial court found Elisha to be a dependent child as defined in R.C. 2151.04. In its Judgment Entry the trial court wrote:
"The child was living in an environment whose conditions warranted the State of Ohio in the best interest of the child in assuming guardianship on date of the release of the child from the immediate care of the hospital where the child was born. * * * Information available to Children Services and to the Court from prior cases indicate a consistent inability on behalf of the mother to provide a sanitary environment for her children of a nature ensuring their health and safety and to protect the children from neglect, dependency and abuse. * * * The biological father and his spouse were also found to be the parents of three children for which they had lost permanent custody through a prior Children Services neglect case in Lawrence County, Ohio. * * * The totality of the circumstances presented at the time of the child's release from the hospital required the intervention of Children Services to protect the child from dependency. * * *"
 {¶ 12} On July 2, 2004 and September 14, 2004, the trial court held a dispositional hearing to consider DJFS's prayer for permanent care and custody. Thompson testified that in his opinion, Theo is not a "fit mother." In particular, Thompson testified that Theo "has a terrible home, she does not provide for her children properly, her kids had done disgusting things in result of the filth in her home, she does not make good choices and based on the background, history and involvement that I have with [Theo] I would not recommend that she have children in her care * * *." Thompson admitted that Theo has demonstrated the ability to make some improvement, but that her improvements are not lasting. He stated that "[a]t times her home has improved but it laxes, if you constantly stay on her and supervise her like she is a two or three year old child you can get her to keep her house clean. But, the minute that you don't come back her house is in the same condition that it was before. So, she is unable to maintain a home * * *. Theo is unable or unwilling to be a good parent."
 {¶ 13} Ferguson also testified at the dispositional hearing and stated that she conducted a homestudy on both Theo and Norman. Regarding Theo's home, Ferguson testified that it is "a two bedroom trailer but there was clothing everywhere, dirty clothes, you couldn't tell if it was dirty or clean. I would not have been able to take the child there at that home on that day." She also noted that Theo lives with her mother and that there is no bedroom for Elisha in the mobile home. Theo told her that she does not sleep in her own room and that Elisha could have that bedroom.
 {¶ 14} Ferguson further testified that she received a phone call from Theo on February 9, 2004 claiming that Theo had called the sheriff the previous evening because Norman threatened her and threatened to break down Theo's door. Moreover, Ferguson stated that during Theo and Norman's visitations with Elisha, they had lice problems. Ferguson testified that Elisha's chances for adoption are high and that Elisha's foster parents would like to adopt her.
 {¶ 15} Finally, Ferguson testified that Norman and his wife kept a suitable home. Their mobile home is clean and contains a separate bedroom for Elisha. Ferguson stated, however, that in her opinion Norman should not be awarded custody because (1) of his past history with his three oldest children; (2) his unstable marriage apparently due to his extramarital affair with Theo; (3) in her experience, bringing a child into a home where the wife is not the mother of that child is dangerous; and (4) she has knowledge of Norman's possible alcohol abuse.
 {¶ 16} The trial court also heard testimony from Theo, Norman, Norman's wife, Norman's adult daughter, and Dolly Cazad. Theo testified that she understands why she lost her four oldest children, but that she has since reformed and she now keeps a clean home and is prepared to care for and love Elisha. Norman testified that he and his wife also keep a clean home and that they are prepared to care for Elisha. According to Norman, the fact that he lost his three oldest children in the early 1980's should not impact this case and that since that time he has raised a daughter to adulthood without state involvement. Norman's daughter testified that her parents raised her well and did not neglect or abuse her. Norman's wife testified that their home is clean, with a bedroom for Elisha, and that she is ready and willing to care for and love Elisha. Finally, Dolly Cazad, Theo's mother-in-law, testified that Theo now keeps a clean home and is able to care for Elisha and should be given the chance to do so.
 {¶ 17} The guardian ad litem's final report recommended that the trial court deny Theo's request for Elisha's custody. The guardian ad litem believed, however, that Norman could successfully raise Elisha but noted that the court may not be able to grant custody to Norman due to R.C.2151.414(E)(11).
 {¶ 18} On October 4, 2004, the trial court awarded DJFS the permanent care and custody of Elisha. In its Judgment Entry, the trial court wrote:
"The Court finds that in accordance with division (E) of Section 2151.414
of the revised code that the child cannot be placed with one of the child's parents within a reasonable period of time and should not be placed with either parent. In accordance with division (D) of section2151.414 of the revised code the Court finds that the permanent commitment is in the best interest of the child and that such finding is supported by clear and convincing evidence. In accordance with ORC Section 2151.414 it is found to be in the child's best interest to terminate the parental rights and grant permanent custody to the agency. The Court in determining the best interest of the child has taken into consideration the relevant factors set forth in ORC 2151.414(D). The child was placed in the temporary custody of Children Service's when the child was approximately four days of age. The parents have had the opportunity to visit with the child during the pendency of the case. The interaction and interrelationship of the child with the child's parents and foster care givers has been considered by the Court. The child is in need for a legally secure permanent placement and that kind of placement cannot be achieved without a grant of permanent custody to the agency."
 {¶ 19} With regard to Theo, the trial court found: "* * * in prior cases the mother of the child has been involved in reasonable case planning and diligent efforts by the agency to assist the mother to remedy problems that have caused his child to be placed outside of the home. The mother in prior cases and in regards to her other children has failed continuously and repeatedly to substantially remedy the conditions causing those children and now this child to be placed outside of the mother's home. The mother has previously had opportunity to address the issues through a case plan offered in case number 99-CD-30. The mother's inability to successfully comply with the case plan resulted in her three older children being placed with their father Carl Cazad. Thereafter a fourth child Daniel was born to Theo Cazad and the Department of Job and Family Services moved for permanent custody. Permanent custody regarding the fourth child, Daniel, in case number 00-CD-35, was withdrawn upon the agreement of the parties that the child be placed with the child's stepfather, Carl Cazad. Thereafter these four children were subject to another out of home placement in a Court case filed in 2002. A case plan was again provided to the mother. The mother being unable to substantially comply with the case plan agreed to legal custody of the children being placed with a relative of Carl Cazad."(sic)
 {¶ 20} With regard to Norman, the trial court concluded:
"the child cannot be placed with the father within a reasonable time or should not be placed with the father because of the statutory requirement of ORC Section 2151.414(E)(11). The Court finds that the father has had parental rights involuntarily terminated pursuant to this section with regard to three of his earlier born children. It is noted by the Court that his prior permanent custody case occurred over twenty years ago. However the statute specifically states that the Court shall enter a finding that the child cannot be placed with the parent if the Court determines by clear and convincing evidence that any of the factors set forth in ORC Section 2151.414(E) exist. Evidence was presented to the Court, that the father is still married to and resides with the mother of those three children who were permanently removed from them in 1981. In addition evidence revealed certain instability exists within the Lucas home including issues of alcohol abuse and violence."(sic)
 {¶ 21} This appeal followed.
 I. {¶ 22} In her first assignment of error, Theo asserts that the trial court erred when it found Elisha to be a dependent child pursuant to R.C. 2151.04. Specifically, Theo argues that insufficient evidence supports the trial court's judgment. Theo contends that: (1) the evidence presented to the trial court focused on two prior proceedings in 1999 and 2000, in which the trial court entered no judicial finding that Theo was unfit and in which no motion for permanent custody was filed; (2) the evidence presented to the trial court regarding the 2002 proceeding contained no allegations of misconduct or malfeasance on the part of Theo, but rather focused on Carl Cazad who had custody of the children; (3) the evidence showed, despite allegations to the contrary, that Theo maintained and sought proper prenatal care while pregnant with Elisha; (4) DJFS made no genuine attempt to investigate her home in this case; and (5) there were no allegations that Theo abused her four oldest children or Elisha and that she is not accused of any misconduct, such as substance abuse or criminal behavior.
 {¶ 23} Generally, "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; see, also, Wardeh v. Altabchi, 158 Ohio App.3d 325,2004-Ohio-4423. A reviewing court must afford every reasonable presumption in favor of a trial court's judgment and findings of fact, and construe evidence that is susceptible of more than one interpretation consistently with the trial court's judgment. Wardeh, citing Gerijo Inc.v. Fairfield (1994), 70 Ohio St.3d 223, 226.
 {¶ 24} Our role as a reviewing court does not permit us to reweigh evidence and to assess witness credibility. Rather, as stated in Statev. Awan (1986), 22 Ohio St.3d 120, 123, appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear witnesses and to observe their demeanor. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact." In re Harmon (Sept. 24, 2000), Scioto App. No. 00CA2693.
 {¶ 25} Dependency must be proven by clear and convincing evidence and the focus must be whether the child is dependent, not the faults of the parents. In the Matter of Kasler (June 5, 1991), Athens App. No. CA1476. "A finding of dependency must be rooted upon the question of whether the child is receiving proper care." Id. Nonetheless, "where the state can show that the `condition' or `environment' into which a newborn baby will enter is such as to justify the state's preventing that child from entering the environment, it is clear that the state may intervene. R.C.2151.04(C). By focusing on the environment, which can be viewed and evaluated with or without the child, the legislature has chosen to permit the state to intercede in familial affairs at this early stage. A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child. Id. Thus, a trial court can adjudicate a child as dependent even when the child has never resided with the biological parents. See In re Smart (1984),21 Ohio App.3d 31, 486 N.E.2d 147.
 {¶ 26} In the case sub judice, we conclude that competent, credible evidence supports the trial court's conclusion that Elisha is dependent pursuant to R.C. 2151.04. At the adjudicatory hearing, Thompson testified about the condition of Theo's home at the time her three oldest children were removed from her care and the fact that Theo is unable to continuously provide a suitable and clean home environment without supervision. Ferguson testified that since 2002, DJFS has received referrals regarding Theo's visits with her four oldest children. While Ferguson did not personally investigate those referrals, she had knowledge that the investigations determined that the same sanitation and environmental concerns exist in Theo's home.
 {¶ 27} The fact that much of the evidence regarding the Theo's home environment focused on the conditions present at the time her other children were removed from the home does not render the trial court's finding against the sufficiency of the evidence. A trial court may properly rely on the history of a poor home environment and conditions unless substantial evidence exist to prove otherwise. Smart at 34. In this case, although Theo and Dolly testified that Theo now keeps a clean home, Ferguson testified that DJFS has received referrals regarding the condition of Theo's home since 2002.
 {¶ 28} Accordingly competent, credible evidence supports the trial court's judgment and we hereby overrule Theo's first assignment of error.
 II. {¶ 29} In her second assignment of error, Theo argues that the trial court's finding that Elisha cannot or should not be placed with her within a reasonable time is against the manifest weight of the evidence. In particular, Theo notes the absence of evidence at the dispositional hearing to prove that any factor contained in R.C. 2151.414(E) exists.
 {¶ 30} We again note that "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E.Morris Co., supra, at syllabus; see, also, Wardeh,
supra. A reviewing court affords every reasonable presumption in favor of the trial court's judgment and findings of fact, and construes evidence that is susceptible of more than one interpretation consistently with the trial court's judgment. Wardeh, citing Gerijo Inc., supra, at 226.
 {¶ 31} Clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court defined "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not the extent of such certainty as required beyond a reasonable doubt in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-104; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
 {¶ 32} Additionally, we note that a parent has a "fundamental liberty interest in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his of her children.Santosky v. Kramer (1982), 455 U.S. 745, 753; In re Murray (1990),52 Ohio St.3d 155, 156. A parent's rights, however, are not absolute. Rather, "it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed." In re Cunningham (1979),59 Ohio St.2d 100, 106, quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54,58. Thus, the state may terminate parental rights when a child's best interest demands such termination.
 {¶ 33} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion to request permanent custody. In considering a motion filed pursuant to R.C. 2151.413, a trial court must follow the R.C. 2151.414 guidelines. R.C. 2151.414(E) sets forth factors that a trial court must consider when determining whether a child cannot or should not be placed with either parent within a reasonable time. If a court finds, by clear and convincing evidence, the existence of any one of the factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the factors contained in R.C. 2151.414(E). The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See In re Williams S. (1996), 75 Ohio St.3d 95;In re Hurlow (Sept 21, 1998), Gallia App. No. 98CA6; In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 34} In the case sub judice, Theo asserts that DJFS did not establish any of the R.C. 2151.414(E) factors. In its Judgment Entry, the trial court generally referred to the R.C. 2151.414.(E) factors, but did not state which particular factors it relied upon. Nevertheless, we find some competent, credible evidence to support the trial court's determination that Elisha cannot or should not be placed with Theo within a reasonable time.
 {¶ 35} R.C. 2151.414(E)(1) provides:
"Following the placement of the child outside of the child's home and notwithstanding case planning and direct efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be place outside the child's home."
 {¶ 36} Theo argues that this provision is inapplicable because DJFS did not offer her a case plan and that in the past cases Theo voluntarily entered counseling through Integrated Services for Youth. While it is true that DJFS did not offer a case plan for Theo in this particular case, it did offer case plans in prior cases and Theo did not successfully complete those plans. The trial court found that in past cases Theo:
"has been involved in reasonable case planning and diligent efforts by the agency to assist [her] to remedy the problems that have caused this child to be placed outside the home. [Theo] in prior cases and in regards to her other children has failed continuously and repeatedly to substantially remedy the conditions causing those children and now this child to be placed outside of [her] home. [Theo] has previously had the opportunity to address the issues through a case plan offered in case number 99-CD-30. [Theo's] inability to successfully comply with this case plan resulted in her three older children being placed with their father Carl Cazad. Thereafter a fourth Daniel was born to Theo Cazad and the Department of Job and Family Services moved for permanent custody. Permanent custody regarding the fourth child, Daniel, in case number 00-CD-35, was withdrawn upon the agreement of the parties that the child be placed with the child's stepfather, Carl Cazad. Thereafter these four children were subject to another out of home placement in a Court case filed in 2002. A case plan was again provided to [Theo]. [Theo] being unable to substantially comply with the case plan agreed to legal custody of the children being placed with a relative of Carl Cazad."
 {¶ 37} The testimony of Randy Thompson and Teneka Ferguson support the trial court's findings. Thompson testified concerning his home visits with Theo prior to the removal of her three oldest children and Theo's inability to keep a safe and suitable home environment absent supervision. This testimony provides competent, credible evidence to support the trial court's judgment that Elisha cannot or should not be placed with Theo. Accordingly, based upon the foregoing reasons, we hereby overrule Theo's second assignment of error.
 III. {¶ 38} In her third assignment of error, Theo asserts that the trial court's conclusion that the termination of her and Norman's parental rights serves Elisha's best interests is against the manifest weight of the evidence. Theo contends that R.C. 2151.414(D) shows that Elisha's best interest requires the court to deny DJFS's request for permanent custody.
 {¶ 39} Again, we note that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co., supra, at syllabus; see, also Wardeh,
supra. R.C. 2151.414(D) states, in relevant part:
"In determining the best interest of the child * * * the court shall consider all relevant factors, including, but not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in temporary custody of one or more public children services agencies or private child placing agencies for twelve months or more of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 40} In the case sub judice, the trial court considered the "interaction and interrelationship of the child with the child's parents and foster care givers," but found that Elisha is "in need of a legally secure permanent placement and that kind of placement cannot be achieved without a grant of permanent custody to the agency." In relation to Theo, the trial court specifically noted the case plans offered to her in previous cases and that fact that she "failed continuously and repeatedly to substantially remedy the conditions causing" her older children and Elisha to be placed outside her home. Moreover, the trial court found that Theo "is unable to provide a stable environment, the supervision necessary to protect the child's safety and to provide for the child's education."
 {¶ 41} Again, we conclude that the trial court's findings are supported by the evidence adduced at the hearing. Thompson testified that Theo is unable to keep a suitable home for children unless she is supervised. Ferguson testified that she conducted a homestudy on Theo's residence and found it to be unsuitable for placement because dirty clothing made it impossible to determine whether the home was clean and the home lacked a separate bedroom for Elisha. Based on this testimony, competent, credible evidence exists to support the trial court's finding that Elisha is in need of a legally secure permanent placement and that permanent custody is needed to achieve such a placement.
 {¶ 42} Theo also argues that the trial court erred when it found that it is in Elisha's best interest to not be placed with Norman. Initially, we note that an appealing party may not ordinarily complain of an error committed against a nonappealing party. In re Mourey, Athens App. No. 02CA48, 2003-Ohio-1870, ¶ 20. However, "[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." Id., quoting In reSmith (1991), 77 Ohio App.3d 1, 131; In re Hiatt (1993),86 Ohio App.3d 716, 721. Because R.C. 2151.414 "specifically requires the juvenile court to find that `the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents' R.C. 2151.414(B)(1)," In re Kincaid, Lawrence App. No. 00CA3, 2000-Ohio-2005, 200-Ohio-2017, Theo's residual parental rights are affected by the termination of Norman's parental rights. Thus, Theo has standing to raise this assignment of error.
 {¶ 43} According to R.C. 2151.414(D)(5), if one of the R.C.2151.414(E)(7) through (11) factors exists, the trial court must find that it is in a child's best interest to award DJFS permanent custody. Here, R.C. 2151.414(E)(11) is applicable. It provides that a parent's rights must be terminated if "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child." Evidence presented at the adjudicatory and dispositional hearings revealed that in the early 1980s Norman had three children removed from his care, and his parental rights to those children involuntarily terminated. Therefore, we believe that some competent, credible evidence exists to support the trial court's finding that placement with Norman is not in Elisha's best interest. Accordingly, based on the foregoing reasons we overrule Theo's third assignment of error.
 IV. {¶ 44} In her fourth and final assignment of error, Theo argues that the trial court erred by finding that Elisha cannot be placed with Norman. Again, we note that Theo has standing to bring this assignment of error because her residual parental rights are affected by any error committed against Norman. In re Kincaid, supra.
 {¶ 45} Theo first argues that the trial court's finding that Elisha cannot be placed with Norman pursuant to R.C. 2151.414.(E)(11) is erroneous because one factor cannot serve to divest a parent of his parental rights when the trial court is charged to consider "all relevant evidence" and other relevant evidence militates against such termination. However, as noted above, if the trial court finds by clear and convincing evidence the existence of any one of the R.C. 2151.414(E) factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See In re Williams S. (1996), 75 Ohio St. 3d 95; In re Hurlow
(Sept. 21, 1998), Gallia App. No. 98CA6, In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 46} A trial court must consider "all relevant evidence" when it determines whether any of the R.C. 2151.414(E) factors are present. This argument is buttressed by the fact that R.C. 2151.414(D) specifically states that a trial court, in deciding a child's best interest, must "consider all relevant factors, including, but not limited to, the following * * *." If the drafters intended trial courts to engage in independent analyses when following R.C. 2151.414(E) they would have included language similar to that found in R.C. 2151.414(D).
 {¶ 47} Theo also argues that R.C. 2151.414(E)(11) is unconstitutional because it creates an irrebuttable presumption that deprives individuals of their constitutional rights. We note, however, that neither Norman nor Theo raised this issue in the trial court. Theo argues that this fact should not prevent this court from deciding the issue because Norman's counsel presumed that this factor was not dispositive.
 {¶ 48} Generally, when a party fails to raise a constitutional issue in the trial court, that issue will not be heard for the first time on appeal. State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. The "failure to raise at the trial court level the issue of the constitutionally of a statute or its application, which issue is apparent at the time of the trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, syllabus. We note that Theo has failed to point to any reason or justification why she and Norman failed to raise this issue during the trial court proceeding. Theo relies heavily on the fact that the guardian ad litem did not believe that R.C. 2151.414(E)(11) should be dispositive. However, the guardian ad litem's final report indicates the opposite and states that although the trial court may be bound by R.C.2151.414(E)(11), he nevertheless recommends that custody be awarded to Norman. The trial court opted to disregard the guardian ad litem's recommendation because of R.C. 2151.414(E)(11) and additional evidence concerning Norman's alcohol consumption and violent tendencies. Again, we note that the failure of any party to raise this issue in the trial court constitutes a waiver and we decline to address it for the first time on appeal.
 {¶ 49} Accordingly, based upon the foregoing reasons, we hereby overrule Theo's fourth assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[2] Currently, the children's paternal grandmother has custody.