OPINION
{¶ 1} Appellant-petitioner Amanda E. appeals a decision of the Miami County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's decision wherein Amanda's parental rights were terminated, and permanent custody of M.M.-D and C.M.-D (hereinafter "the children") was awarded to Miami County Children's Services (hereinafter "CSB"). The trial court adopted the magistrate's decision in a written *Page 2 
decision filed on September 8, 2008. Amanda filed a timely notice of appeal with this Court on September 22, 2008.
 I {¶ 2} Amanda E. is the biological mother of M.M.-D and C.M.-D, born respectively on March 23, 2006 and March 2, 2007. The children's putative father is Carlos D.-M., Sr.[1] In July of 2007, Amanda was living with her children at the home of her biological father, Paul E. After an incident in which Amanda's father became intoxicated and physically violent, Amanda testified that she took her children and moved into a hotel room occupied by her mother, Shirley E. As a result of the incident at her father's house, Amanda was charged with child endangering and theft in Miami County. Amanda did not appear at court on the charges, and a warrant was issued for her arrest.
 {¶ 3} In August of 2007, Amanda was arrested and held in Juvenile Detention in Montgomery County on menacing charges. While Amanda was in jail, Emily Greer, a caseworker from CSB, was dispatched to locate the children but was unable to do so. Amanda was eventually released from jail towards the end of the summer of 2007. According to her testimony, Amanda and her children moved around a great deal and had no permanent residence. *Page 3 
 {¶ 4} On September 25, 2007, Greer located both children at the residence of Amanda's mother, Shirley, in a single room at a Red Roof Inn. The children had apparently been living with Shirley and her boyfriend for some time. Greer, however, was unable to locate Amanda or the father of the children, and Shirley was unable to provide any information regarding their whereabouts. Pursuant to an ex parte custody order, the children were removed from Shirley's care on September 26, 2007, and placed in the temporary custody of the CSB.
 {¶ 5} On September 27, 2007, the CSB filed a complaint for neglected/dependent children. Ultimately, both of the children were found to be dependent, and temporary custody was granted to CSB. Shortly thereafter, Shirley came forward and petitioned for permanent custody of the children, and the CSB added Shirley and her boyfriend to the case plan for purposes of reunification. During this period of time, CSB was unable to locate Amanda in order to discuss the placement of her children.
 {¶ 6} By March of 2008, it was apparent that reunification of the children with Shirley was impossible because she and her boyfriend failed to cooperate with numerous aspects of the case plan. Thus, Caseworker Erin Brooks contacted Shirley and informed her that the CSB intended to file a motion for permanent custody of the children. The motion was subsequently filed on April 17, 2008.
 {¶ 7} On April 21, 2008, Amanda contacted Brooks regarding the motion for permanent custody. Amanda, however, still refused to provide Brooks with any contact information. Amanda testified at the permanent custody hearing on July 10, 2008, that she informed Brooks that she never intended to abandon her children. Rather, Amanda stated that she and her mother, Shirley, formulated a plan whereby Shirley would petition for *Page 4 
custody of the children while Amanda remained in hiding from the authorities. According to Amanda, once Shirley gained custody, Amanda would come out of hiding and be reunited with her children. In order to further the plan, Amanda testified that she provided Shirley with money and a motor vehicle to provide for the support and maintenance of the children in order to complete the case plan. By March of 2008, however, Amanda testified that she became suspicious that Shirley was lying to her in order to secure additional money because Shirley had ceased providing her with court documents outlining progress being made on the case plan.
 {¶ 8} Amanda testified that on April 10, 2008, she paid an attorney approximately $250.00 to clear up any outstanding arrest warrants so that she could attempt to regain custody of her children. Mistakenly believing that the warrants had been disposed of, Amanda appeared at a child support hearing on May 19, 2008, and was promptly arrested. Thus, Amanda was incarcerated at the time the custody hearing took place on July 10, 2008.
 {¶ 9} In her decision filed on July 17, 2008, the magistrate found that for a period of 207 days from September 26, 2007, until April 21, 2008, there was no contact between Amanda and her children. The magistrate also found that Amanda was incapable of caring for and supporting the children because of her transient lifestyle. Thus, the magistrate held that Amanda abandoned the children and that reunification was, therefore, impossible. The magistrate further held that it was in the best interest of the children to be placed in the permanent custody of the CSB. In its decision filed on September 8, 2008, the trial court adopted the magistrate's decision and affirmed the award of permanent custody to the Miami County CSB. *Page 5 
 {¶ 10} It is from this judgment that Amanda now appeals.
 II {¶ 11} Because we find that Amanda's final three assignments of error are dispositive in the instant case, we will analyze those assignments first. As they are interrelated, Amanda's third and fourth assignments of error will be discussed together as follows:
 {¶ 12} "THE TRIAL COURT ERRED IN UTILIZING A `BEST INTERESTS OF THE CHILD' STANDARD IN ITS DETERMINATION TO PERMANENTLY SEVER THE RIGHTS OF AMANDA [E.] WITH HER CHILDREN.
 {¶ 13} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE CHILDREN CANNOT BE PLACED WITH THEIR MOTHER IN A REASONABLE TIME."
 {¶ 14} In her third assignment, Amanda contends that the trial court erred when it applied a best interest of the child analysis before terminating her parental rights. Specifically, Amanda argues that the court failed to make the required finding that she was an unsuitable parent before awarding permanent custody of the children to CSB. In her fourth assignment, Amanda asserts that the trial court erred when it held that the children could not be placed with her in reasonable amount of time.
 {¶ 15} The Supreme Court of Ohio has recently held that a juvenile court does not have to make an express finding that a party was an unsuitable parent before it could award custody of a child to a non-parent. In re C.R., 108 Ohio St.3d 369, 843 N.E.2d 1188,2006-Ohio-1191. In In re C.R., the Court stated that an adjudication of abuse, neglect, or dependency implicitly involves a determination of the unsuitability of the child's parents. Id. *Page 6 
at ¶ 22, 843 N.E.2d 1188. The implicit unsuitability determination applies to "custodial and/or noncustodial parents." Id. at ¶ 23,843 N.E.2d 1188. The Court concluded that "when a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent."Id. at ¶ 24, 843 N.E.2d 1188. In the instant case, the trial court found both children to be dependent prior to the dispositional hearing wherein permanent custody was ultimately awarded to Miami County CSB. Pursuant to the Supreme Court's holding in In re C.R., implicit in the trial court's adjudication of dependency regarding the children is a finding that Amanda was an unsuitable parent. Thus, her third assignment of error is overruled.
 {¶ 16} R.C. § 2151.413 permits a public children's services agency that has temporary custody of a child to file a motion to request permanent custody. In considering a motion filed pursuant to R.C. § 2151.413, a trial court must follow the R.C. § 2151.414 guidelines. R.C. § 2151.414(E) sets forth factors that a trial court must consider when determining whether a child cannot or should not be placed with either parent within a reasonable time. If a court finds, by clear and convincing evidence, the existence of any one of the factors,"the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." A trial court may base its decision in this regard upon the existence of any one of the factors contained in R.C. § 2151.414(E). The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. In re Cazad, Lawrence County App. No. 04CA36, 2005-Ohio-2574. *Page 7 
 {¶ 17} The trial court found that the factors listed in R.C. § 2151.414(E)(4), established that the children could not be placed with Amanda within a reasonable time, or should not be placed with her. This section states in pertinent part:
 {¶ 18} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 19} Initially, it should be noted that the only individual who came forward to develop a reunification plan with the children after they were placed in the temporary custody of the CSB was Shirley E. Shirley failed to complete the objectives of the case plan. The record establishes that Amanda never attempted to include herself in the case plan until after the CSB had filed for permanent custody of the children. Moreover, CSB made every reasonable effort to locate Amanda in order to include her in the case plan, but was unsuccessful in all of its attempts. Out of the criteria set forth under R.C. § 2151.414(B), the trial court held that the children could not be placed with either parent within a reasonable period of time or should not be placed with the parents. Thus, the court concluded that it was in the best interests of the children to be placed in the permanent custody of the CSB.
 {¶ 20} In making that determination, the court found that Amanda demonstrated a marked lack of commitment towards the children as evidenced by the fact that she remained in hiding for approximately 7 months, during which time she voluntarily had no contact with her children. The testimony offered by Amanda at the hearing indicated that she refused to take responsibility for her part in the alleged scheme with her mother to *Page 8 
circumvent the formal procedures erected by the court in order to be properly reunited with her children. Lastly, Amanda's testimony failed to establish that she could in any way provide a stable environment in which the children could be properly cared for.
 {¶ 21} At the time the motion for permanent custody was filed, the children had spent a significant amount of time in foster care. At the time they were placed in foster care, the record established that both children exhibited developmental delays caused by the unstable, nomadic existence perpetuated by Amanda's inability to provide a permanent, stable environment for them. Since being placed with one another in foster care, the trial court found that both children had developed close bonds with their caregivers and were thriving under their supervision. It is also worthy of note that the children's caregivers were already making arrangements to adopt the children. Thus, the trial court did not err when it held that it was in the children's best interest to be placed in the permanent custody of the CSB.
 {¶ 22} Amanda's fourth assignment of error is overruled.
 III {¶ 23} Amanda's fifth and final assignment of error is as follows:
 {¶ 24} "THE COURT ERRED IN CONCLUDING THE REUNIFICATION WITH THE MOTHER WOULD NECESSARILY RESULT IN AN UNSTABLE LIVING ARRANGEMENT FOR THE CHILDREN."
 {¶ 25} In her final assignment, Amanda contends that the trial court erred when it found that she would be not be able to provide a stable environment for the children if reunification were to occur. Amanda argues that the court's finding in this regard is pure *Page 9 
speculation because CSB never attempted to include her in any case plan to reunify her with the children.
 {¶ 26} Insofar as Amanda asserts that CSB failed to make any effort to include her in the case plan or otherwise remedy her parenting problems, we hold that although CSB is required to prove that it put forth reasonable efforts toward reunification, it does not have to do so at the permanent custody hearing. R.C. § 2151.419; see In re C.F.,113 Ohio St.3d 73, 862 N.E.2d 816, 2007-Ohio-1104, at ¶ 41-43. As stated previously, throughout the seven months in which Amanda essentially disappeared, CSB made several unsuccessful attempts to inform Amanda of the trial court's involvement in the custody of her children. During that time, nothing prevented Amanda from contacting her children. More importantly, nothing prevented Amanda from contacting CSB prior to the filing of the permanent order and requesting that she be included in a case plan designed to reunite her with her children. At the time of hearing, Amanda was incarcerated in Miami County juvenile detention, and her plans regarding employment and housing once she was released were speculative at best. Thus, the trial court did not err when if held that Amanda would be unable to provide a stable living environment for the children.
 {¶ 27} Amanda's fifth and final assignment of error is overruled.
 IV {¶ 28} Because Amanda's first and second assignments of error are interrelated, they will be discussed together as follows:
 {¶ 29} "THE COURT ERRED IN FINDING THAT AMANDA E. HAD ABANDONED HER CHILDREN. *Page 10 
 {¶ 30} "THE TRIAL COURT ERRED IN THE APPLICATION OF THE PRESUMPTION THAT AMANDA E. HAD ABANDONED HER CHILDREN."
 {¶ 31} In her first assignment of error, Amanda contends that the trial court erred when it held that the evidence demonstrated that she had abandoned the children. Specifically, Amanda argues that she was a minor acting at the direction of her mother when she left the children in Shirley's care for 207 days without contacting them. Amanda further asserts that she was misled by her mother with respect to the consequences of her actions and "her legal situation in relation to her children." Amanda argues that although she was ultimately mistaken, she believed that she was acting in her children's best interests when she left them in the care of her mother. Thus, Amanda contends that she did not exhibit an intent to abandon her children which she argues is a requisite element to establish actual abandonment in the instant case. In her second assignment, Amanda argues that the trial court erred in finding that she abandoned her children since she provided evidence in the form of her own testimony which clearly rebutted the presumption.
 {¶ 32} As stated previously, we agree with the ruling of the trial court that pursuant to R.C. § 2151.414(E)(4), the State established by clear and convincing evidence that the children could not be placed with Amanda within a reasonable time, or should not be placed with her. Thus, we do not reach the merits of Amanda's first and second assignments which pertain to whether the trial court erred by finding that Amanda abandoned the children. Said assignments are, therefore, rendered moot and need not be discussed in this instance. *Page 11 
 V {¶ 33} All of Amanda's assignments of error having been overruled or rendered moot, the judgment of the trial court is affirmed.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Jeannine N. Pratt David E. Beitzel Hon. Lynnita K.C. Wagner
[1] Amanda testified at the hearing on July 10, 2008, that she believed that Carlos D-M., Sr., had moved back to Mexico where he was originally from and had no intention of acting as a father to either M.M.-D or C.M.-D. The record reflects that Carlos did not appear before the court at any stage of the permanent custody proceedings regarding the children. The magistrate ultimately held that Carlos' whereabouts were unknown and that he had abandoned the children for the purposes of the permanent custody hearing. *Page 1