[Cite as *In re Ka.W.*, 2024-Ohio-5827.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Ka.W., Ke.W.

Court of Appeals No.    L-24-1129
                                        L-24-1130

Trial Court No.  JC23294765
                           JC24297886

**DECISION AND JUDGMENT**

Decided:  December 9, 2024

\* \* \* \* \*

David T. Rudebock, for appellee.

Misty Wood, for appellant.

\* \* \* \* \*

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting permanent custody of Ka.W. (d.o.b. 12/5/20) and Ke.W. (d.o.b. 1/9/24) to Lucas County Children Services. Finding no error, we affirm.

## II. Facts and Procedural Background

{¶ 2} At the time of Ka.W.'s birth on December 25, 2020, Lucas County Children Services had been working with mother, J.G., and father, M.W. since 2016. Mother and father lost permanent custody of older children in 2017. The issues in the prior proceedings included ongoing domestic violence, substance abuse, and mental health. Father was previously incarcerated after convictions for domestic violence and trafficking in heroin.

{¶ 3} In the present case, LCCS began working with father and mother in March 2023, after receiving a referral from Help Me Grow. In a phone conversation, father told LCCS he had completed programs for domestic violence and anger management and was not interested in case plan services.

{¶ 4} In May 2023, LCCS received a second referral after an incident in Wal-Mart. On May 17, 2023, police responded to the store to investigate drug use and complaints of stealing inside the store. Store surveillance video showed Ka.W. wearing shoes that had not been purchased, with the tags removed. Additionally, father was recorded snorting Xanax, and mother was recorded removing a bag of pills from her purse and placing them on a store shelf before officers arrived. Police charged mother and father with endangering children, and separately charged mother with possession of a controlled substance.

{¶ 5} Because of the couple's history, on May 26, 2023, LCCS filed a complaint in dependency and neglect for Ka.W. The juvenile court awarded LCCS interim custody

2.

at an emergency shelter care hearing that day. The juvenile court scheduled an adjudication hearing for July 12, 2023. After mother requested a continuance to obtain counsel, the adjudication hearing was held on September 15, 2023. The juvenile court adjudged Ka.W. dependent and awarded temporary custody to LCCS. Ka.W. was placed with her paternal great-grandmother.

{¶ 6} The juvenile court approved and filed a case plan, with the goal of reunification. Father's case plan required a diagnostic assessment and treatment, and the completion of parenting classes. Father was discharged from services on October 9, 2023, after he failed to consistently engage in treatment and counseling. Mother's case plan also required a diagnostic assessment and treatment and completion of parenting classes. Mother also submitted random drug screens.

{¶ 7} At the review hearing for Ka.W. on November 27, 2023, the juvenile court found LCCS made and continued to make reasonable efforts to prevent continued removal of Ka.W. from the home. Mother was visiting with Ka.W. at the agency, and at great-grandmother's home.

{¶ 8} On January 9, 2024, mother gave birth to Ke.W. At the time, LCCS was seeking a change of disposition and an award legal custody to mother. LCCS permitted mother to have open visitation with Ka.W. at great-grandmother's home, as well as her own home, with Ka.W. required to stay at her great-grandmother's home a minimum of two nights a week. LCCS did not seek to remove Ke.W. from mother's custody after birth, but instead, Ke.W. remained with mother, subject to protective custody.

3.

{¶ 9} On February 1, 2024, mother was asked to submit a urine screen to test for drug use. Mother did not submit that day, but appeared for her drug test on February 7, 2024, and tested positive for cocaine. After receiving the positive test, LCCS initiated the proceedings that led to permanent custody. LCCS sought interim temporary custody of Ke.W. and withdrew its motion with respect to changing disposition to award custody of Ka.W. to mother.

{¶ 10} At the shelter care hearing for Ke.W., LCCS learned details of a drug raid at mother's home in August 2023. Police executed a search warrant at the home after investigating drug trafficking from the home by father. Prior to the search, police conducted surveillance at the home for several weeks and observed father at the residence on numerous occasions, conducting apparent drug transactions. Police seized evidence from locations throughout the home, including drugs, paraphernalia, and a loaded gun from the top of a dresser, as well as personal items of father. After the drug raid, police filed felony charges against father, including trafficking and possession of drugs and having weapons while under disability.

{¶ 11} Mother had represented to LCCS that father did not live in the home with mother and that mother's contact with father was limited to co-parenting. Mother also claimed no knowledge of any drug trafficking from her home, and while she knew about police raiding her home, she was not forthcoming about the incident with LCCS. Mother's representations to LCCS, moreover, were called into question by other facts. For example, mother became pregnant with Ka.W. during the time she claimed limited,

4.

co-parenting only contact with father. Additionally, the police surveillance demonstrated father was often in the home and testimony regarding locations where police seized contraband from mother's home demonstrated mother would have been aware of the drug activities.

{¶ 12} The warrant for father issued just before the shelter hearing in February 2024, and police arrested father at the shelter care hearing for Ke.W. Father also had a recent positive drug test, on January 25, 2024, testing positive for cocaine, fentanyl, and THC. After his arrest and positive drug test, father re-engaged with services, but he was not consistent with services. The juvenile court placed Ka.W. and Ke.W. in foster care, following the hearing.

{¶ 13} On April 3, 2024, the juvenile court held an adjudication and disposition hearing as to Ke.W. and a disposition hearing as to Ka.W. Mother was present with her attorney. Father arrived late for hearing. At the close of the adjudication hearing, the juvenile court found Ke.W. a dependent child, having previously found Ka.W. a dependent child.

{¶ 14} The juvenile court then proceeded to a dispositional hearing as to both Ka.W. and Ke.W. In addition to the LCCS witnesses, mother and father both testified. Mother acknowledged her history of substance abuse, her prior LCCS case resulting in loss of permanent custody of two older children, and her positive urine screen in February 2024, which mother tried to explain as a false positive screen. Mother testified that she found a plastic bag with white powder and "tasted" it to determine whether it was

cocaine, and after determining it was cocaine, she flushed the contents of the bag and did not ingest the drug. Father acknowledged his criminal history and loss of custody for an older sibling of Ka.W. and Ke.W. Father also noted his current, pending felony charges arising from the drug raid in August 2023.

{¶ 15} At the close of the hearing, the juvenile court announced its decision on the record. Significantly, the juvenile court noted that mother and father had previously lost custody, "and so the standard switches, the burden under (E)(11) turns to them to prove that they remedied the situation for the removal in the beginning, that they've taken care of that." The court found evidence demonstrated drug activity continued, based on the Wal-Mart incident, the drug raid at mother's home, father's arrest, and mother's positive drug screen, with the court finding mother's claim she only "tasted" the powder not credible. The court found it was in the best interests of the children to award permanent custody to LCCS.

{¶ 16} On April 26, 2024, the juvenile court entered judgment, as to Ka.W. and Ke.W. In a written entry, the juvenile court determined R.C. 2151.414(B)(1)(a) applied, in that the children were not abandoned or orphaned, had not been in the custody of LCCS for at least 12 months of a consecutive 22-month period, and cannot be placed with either parent within a reasonable time. The court further found that the children could not or should not be placed with either parent because mother and father had previously had parental rights involuntarily terminated and failed to provide clear and convincing evidence to demonstrate that, notwithstanding the prior termination, they can

6.

provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the children, as provided under R.C. 2151.414(E)(11). The court found that LCCS met its burden of proving permanent custody is in the best interest of the children, considering all relevant, statutory factors under R.C. 2151.414(D). The juvenile court granted permanent custody of Ka.W. and Ke.W. to LCCS.

{¶ 17} This appeal followed.

### III. Assignment of Error

{¶ 18} On appeal, father asserts a single assignment of error:

> Clear and convincing evidence was not presented to prove the child[ren] could not be placed with either parent.

### IV. Analysis

{¶ 19} In challenging the juvenile court's decision, father does not dispute the factual findings or judgment as to father but argues that the "undisputed evidence shows that mother is able to meet the children's needs." Therefore, father argues there was no evidence that the children could not be placed with *either parent* within a reasonable time, as required under R.C. 2151.414.

{¶ 20} We review a juvenile court's judgment, awarding permanent custody under R.C. 2151.414 to determine whether it is supported by the manifest weight of the evidence. *In re W.M.,* 2022-Ohio-1978, ¶ 41 (6th Dist.), citing *In re A.H.,* 2011-Ohio-4857, ¶ 11 (6th Dist.) (additional citation omitted). Before terminating parental rights and granting permanent custody to LCCS under R.C. 2151.414, the juvenile court must first find, by clear and convincing evidence, that (1) one of the enumerated factors under R.C.

7.

2151.414(B)(1)(a) -(e) apply and (2) that permanent custody is in the best interest of the child.  R.C. 2151.414(B)(1). *In re Z.C.,* 2023-Ohio-4703, ¶ 7. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Id.* at ¶ 7, quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 21} Father's sole challenge is to the juvenile court's finding under R.C. 2151.414(B)(1)(a), which permits a grant of permanent custody of a child when it is in the best interests of the child, by clear and convincing evidence, and the child has not been in the temporary custody of the agency for twelve or more months within a consecutive twenty-four-month period and the evidence demonstrates "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Because the juvenile court determined R.C. 2151.414(B)(1)(a) applied, it examined the factors under R.C. 2151.414(E), with only one factor required to support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re T.G.*, 2023-Ohio-2576, ¶ 38 (6th Dist.).

{¶ 22} The juvenile court found that R.C. 2151.414(E)(11) applied to mother's and father's case, or that

> The parent has had parental rights involuntarily terminated with respect to a
> sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the

Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

Father does not dispute that he and mother had their parental rights terminated with respect to siblings of Ka.W. and Ke.W. This finding under R.C. 2151.414(E)(11), moreover, placed the burden on father and mother to demonstrate, by clear and convincing evidence, that "he or she can legally secure permanent placement and adequate care for the health, welfare, and safety of the child." *In re N.J.,* 2023-Ohio-3190, ¶ 44 (6th Dist.), quoting *In re J.H.,* 2017-Ohio-940, ¶ 22 (8th Dist.); *see also In re Y.W.,* 2018-Ohio-325, ¶ 39 (6th Dist.).

{¶ 23} As to the best interest determination, the juvenile court applied the factors under R.C. 2151.414(D)(1), and determined permanent custody with LCCS was in the best interest of the children. The factors considered under R.C. 2151.414(D)(1) are:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

9.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 24}** The juvenile court determined that the interaction and relationship between parents and children was appropriate, but the guardian ad litem recommended permanent custody for both children. The court noted that LCCS removed Ka.W. twice based on substance abuse and removed Ke.W. shortly after birth. The court found that the need for permanency of both children could only be achieved through an award of custody to LCCS. Additionally, the court specifically determined that division (E)(11) applied, based on prior adjudications that resulted in father and mother losing custody of older siblings of Ka.W. and Ke.W., and mother and father failed to demonstrate they remedied the circumstances that led to the previous loss of custody.

**{¶ 25}** Father's argument on appeal rests entirely on the fact that LCCS was preparing to return Ka.W. to mother before learning of the drug raid or mother's positive drug screen. He argues the evidence demonstrated that mother could meet the children's needs, with her parenting skills described as excellent. Therefore, father argues that LCCS failed to demonstrate that the children could not be placed with either parent, as required under R.C. 2151.414, and the juvenile court erred in terminating the parental rights of mother.

**{¶ 26}** In response, appellee, LCCS, questions whether father can assert a challenge based on mother's rights, where mother did not pursue an appeal of the

10.

judgment. Ordinarily, an appealing party may not challenge error affecting a nonappealing party. *In re Cazad,* 2005-Ohio-2574, ¶ 42 (4th Dist.). However, "Because R.C. 2151.414 specifically requires the juvenile court to find that 'the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents'" father might assert a challenge based on the effect the termination of mother's parental rights has on his residual rights. (Citations omitted). *Id.* This argument presumes that father's residual rights survived the juvenile court's judgment in awarding permanent custody to LCCS, but an award of permanent custody divests parents of their parental rights, including residual rights. *See In re Palmer,* 12 Ohio St.3d 194, 196 (1984), citing R.C. 2151.011(B)([31]).

{¶ 27} While father retained no parental rights to assert, his argument regarding mother's rights also lacks support in the record. Father correctly cites the LCCS decision to pursue reunification with mother, but he ignores the fact that LCCS did so without full knowledge of the circumstances. Mother failed to disclose to LCCS that father was still a part of her life or that he was using her home to sell drugs. Mother also claimed that police came to her home in August 2023 to look for father, rather than disclose the fact police searched her home. Finally, when confronted with facts, such as her positive drug test, mother provided explanations that were not credible and demonstrated that mother had not addressed the issues that led to her previous loss of custody.

**{¶ 28}** Accordingly, considering the record, we find the juvenile court's judgment is supported by clear and convincing evidence. Father's sole assignment of error is not well-taken.

### V. Conclusion

**{¶ 29}** Finding substantial justice has been done, we affirm the judgment of the Lucas County Court of Common Pleas, Juvenile Division, awarding permanent custody of Ka.W. and Ke.W. to LCCS.  Appellant, father, is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                                  _____
                                                              JUDGE

Gene A. Zmuda, J.

Myron C. Duhart, J.                                _____
CONCUR.                                                              JUDGE

                                                             _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.