[Cite as *In re Kh.M.*, 2017-Ohio-8706.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Kh.M., Ky.M.

Court of Appeals Nos. L-16-1199
L-16-1223

Trial Court No. JC14-243864

**DECISION AND JUDGMENT**

Decided: November 27, 2017

* * * * *

Stephen D. Long, for appellants mother and father.

Jeffrey P. Nunnari, for appellant father.

Karen L. Bower, for appellee.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} This is a consolidated appeal from the September 26, 2016 judgment of the

Lucas County Court of Common Pleas, Juvenile Division, terminating the parental rights

of appellants, T.B. ("mother") and Ke.M. ("father"), and awarding permanent custody of

Kh.M. and Ky.M. (the "children") to appellee, Lucas County Children Services ("LCCS").[1]

## A. Facts and Procedural Background

{¶ 2} On October 28, 2014, LCCS requested an ex parte order of emergency custody for the children. The trial court granted LCCS's request and a complaint was filed the next day, alleging that the children were dependent, neglected and abused. A shelter care hearing was held, and the children were placed in the temporary custody of LCCS. According to the praecipe for service, the complaint was served on mother at her address in Toledo, Ohio. No address was provided for father, who is a member of the armed services and was not an Ohio resident at the time these proceedings were initiated.

{¶ 3} At the ex parte hearing, LCCS informed the juvenile court that it became involved in this matter in June 2014 after the agency received reports of the children being left home alone. The agency provided mother with case plan services, but mother became uncooperative concerning her mental health treatment. Further, Ky.M., who was in kindergarten at the time, missed 16 days of school in October. According to LCCS, mother had been evicted from her home and admitted to using marijuana daily during the weeks leading up to LCCS's request for an ex parte hearing. Based on this information, the court found that the children's continued residence with mother was not in their best

---

[1] Ke.M. is the father of Ky.M. Kh.M.'s father, R.B. failed to appear for any of the hearings in the court below and is not a party to this appeal.

2.

interests and granted shelter care custody of the children to LCCS. The court then set the matter for an adjudication hearing.

{¶ 4} Prior to the adjudication hearing, attempts were made to perfect service of process on father, whose whereabouts were unknown at the time. According to a publication summons contained in the record, service of summons was completed by publication for father 12 days prior to the December 23, 2014 adjudication hearing.

{¶ 5} At the adjudication hearing, counsel appeared on behalf of father and filed an "Entry of Appearance and Request for Discovery." Father did not appear at the hearing. According to the magistrate's findings of fact, mother reported that father resided in Chicago. Mother also indicated that she had suffered "severe domestic violence" at the hands of father, and that the children were physically abused by father while in his care.

{¶ 6} In its order following the adjudication hearing, the court indicated that LCCS made reasonable efforts to prevent the removal of the children, including providing mother with substance abuse assessment, parenting, diagnostic assessment, and housing. Father was expected to show an active interest. Having failed to comply with the foregoing services, the court found that Kh.M. was neglected and abused, and that Ky.M. was neglected. The court awarded temporary custody of the children to LCCS, and approved a case plan that had the ultimate goal of reunification of the children with their parents.

3.

**{¶ 7}** Between March 2015 and May 2015, father filed several motions through counsel, including a "Motion for Legal Custody and Request for Hearing," a "Motion for Order of Home Study," and a motion for continuance. A hearing was held on these motions on June 8, 2015. Father was present with counsel at this hearing. At the hearing, father requested that the trial court dismiss, without prejudice, the foregoing motions. The court granted father's request and dismissed the motions without prejudice by judgment entry dated June 10, 2015.

**{¶ 8}** Eight days after the trial court entered its judgment entry, father, acting pro se, filed a "Motion for Change of Custody/Motion to Modify the Allocation of Parental Rights" and a "Motion to be granted a speedy trial." Thereafter, father's counsel filed a motion to withdraw as counsel. In her motion, father's counsel asserted that father asked her to withdraw as his counsel, and further stated that father was no longer cooperating with her, resulting in her inability to continue to represent him. Upon reviewing counsel's motion and notifying father of his right to counsel, the court granted the motion to withdraw, scheduled a hearing on father's motion for custody of the children, and allowed father to proceed pro se.

**{¶ 9}** On August 20, 2015, LCCS filed its motion for permanent custody of the children, arguing that permanent custody was in the children's best interests and that the children could not or should not be placed with their parents within a reasonable time, that they had been in LCCS's temporary custody for a period of 13 months of the past 22 months, and that mother and father had abandoned the children. In the motion, LCCS

4.

asserted that mother had failed to comply with her case plan services by (1) continuing to use marijuana and indicating that she would not cease such use, (2) dropping out of IOP treatment at A Renewed Mind, (3) residing with a boyfriend whom also had an untreated substance abuse problem, (4) failing to enroll in parenting classes or domestic violence counseling, (5) showing a lack of attention to her children during visits, and (6) meeting sporadically with her caseworker. Further, LCCS alleged that father was noncompliant with his case plan services insofar as he (1) only met with Ky.M. twice in the preceding year, (2) was convicted of domestic violence and was reported to have previously engaged in acts of domestic violence against mother and the children, and (3) failed to engage in any case plan services or return LCCS's phone calls.

{¶ 10} Following LCCS's filing of its motion for permanent custody, the trial court appointed new counsel for father at a hearing held on September 16, 2015, at which father was present. Father's new counsel filed a request for discovery one week later. After filing several further motions, father's counsel filed a motion to withdraw on December 8, 2015, which was denied by the trial court without a hearing on the following day.

{¶ 11} The hearing on LCCS's motion for permanent custody began on January 26, 2016. At the hearing, LCCS presented the testimony of the caseworker responsible for the children, Kari Vebenstad. At the conclusion of Vebenstad's testimony, the juvenile court continued the matter for six months in order to allow father to receive case plan services. The court scheduled review hearings during those six

5.

months and directed father to complete a domestic violence evaluation and to visit with the children on the weekends of the review hearings. These review hearings were eventually held on February 19, 2016, March 18, 2016, May 20, 2016, and June 17, 2016. A pretrial hearing was held on July 7, 2016. Father and his counsel were present during these hearings.

{¶ 12} The disposition hearing on LCCS's motion for permanent custody that began on January 21, 2016, resumed on July 29, 2016. Further hearings were held on August 22, 2016, August 26, 2016 and August 30, 2016. Mother and father, along with their attorneys, were present for these hearings.

{¶ 13} At the foregoing hearings, LCCS called three witnesses, the children's guardian ad litem, and one rebuttal witness. Mother called three witnesses on her behalf and father called two witnesses on his behalf. Exhibits were admitted into evidence on behalf of all of the parties. The children's guardian ad litem, Amy Stoner, opined that permanent custody was in the children's best interests. At the conclusion of the hearings, the juvenile court granted LCCS's motion for permanent custody.

{¶ 14} Thereafter, father and mother filed separate timely notices of appeal. Mother and father were appointed counsel. Based upon his belief that no prejudicial error occurred below, appointed counsel has filed a motion to withdraw and a no-error brief on behalf of mother and father pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

6.

**{¶ 15}** *Anders* and *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978), set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In *Anders*, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Anders* at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.*

**{¶ 16}** Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. *Id.* Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if state law so requires. *Id.*

**{¶ 17}** Father has also retained counsel to submit a brief on his behalf. Therefore, we will examine father's assignment of error in addition to appointed counsel's proposed assignment of error.

### B. Assignment of Error

**{¶ 18}** Appointed counsel proposes the following assignment of error in his *Anders* brief:

7.

The trial court erred in finding that permanent custody was supported by clear and convincing evidence and the grant of permanent custody was against the manifest weight of the evidence.

{¶ 19} Additionally, the brief filed on behalf of father by retained counsel contains the following assignment of error:

Appellant was denied the effective assistance of counsel in the proceedings below, as appellant's counsel failed to raise the juvenile court's lack of personal jurisdiction over him, which resulted in appellant losing custody of his child, with permanent custody being granted to the state of Ohio.

## II. Analysis

{¶ 20} In appointed counsel's sole proposed assignment of error, he argues that the juvenile court's grant of permanent custody to LCCS was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

{¶ 21} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.353(A)(4), the juvenile court must find, by clear and convincing evidence, two things: (1) that the children cannot be placed with one of their parents within a reasonable time or should not be placed with their parents under R.C. 2151.414(E), and (2) that permanent custody is in the best interests of the child under R.C. 2151.414(D)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the

8.

facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It is more than a preponderance of the evidence, but does not require proof beyond a reasonable doubt. *Id.*

{¶ 22} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

9.

**{¶ 23}** Here, the trial court found that the children could not or should not be returned to their parents within a reasonable time under R.C. 2151.414(E)(1) and (4). R.C. 2151.414(E) provides, in relevant part:

> (E) * * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
>
> * * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶ 24} Under R.C. 2151.414(E), the juvenile court found that mother had been discharged from her services due to her noncompliance. The court also found that mother habitually engaged in violent relationships. Despite mother being sober for a few months prior to its order, the court noted several failed urine screens prior to that period of sobriety, and found that mother's sobriety lasted too short of a time to demonstrate that she was able to remain sober given her extensive substance abuse history. The court went on to highlight the fact that mother was charged with menacing in July 2016 and that she had a history of anger management issues. As to father, the court found that he refused to engage in services.

{¶ 25} Based on our review, the foregoing findings are supported by the record. Concerning mother, Vebenstad testified that mother's case plan included assessments for mental health and substance abuse, interactive parenting, and a demand that she obtain and maintain safe, stable and appropriate housing. According to Vebenstad, mother completed interactive parenting and was able to obtain and maintain housing through the YWCA. Further, mother completed her mental health assessment and substance abuse assessment through A Renewed Mind, after which she was recommended to complete both individual counseling and outpatient treatment for substance abuse. Mother was

11.

unable to complete the counseling and substance abuse treatment because she was discharged for lack of compliance with the program. Vebenstad testified that mother reported that she did not intend to stop using marijuana as she did not see an issue with her usage of the drug. She went on to state that, although mother successfully completed her parenting, there were still ongoing concerns from LCCS about her parenting ability on an ongoing basis, given the girls' significant behavioral issues. Further, Vebenstad testified that mother resorted to physical discipline that left loop marks and bruising on the children prior to their removal.

{¶ 26} Concerning father, Vebenstad testified that father was largely uncooperative during the time in which the children were in LCCS's custody. Father initially resided in Chicago, but later moved to Toledo. Vebenstad stated that father's case plan included a requirement that he meet with LCCS so that his need for services could be ascertained. LCCS informed father that the agency wanted to request an interstate home study on him since he was a resident of the state of Illinois. The interstate study was required in order to ascertain father's background, including any criminal record or history with children services. Father informed LCCS that he was reenlisting in the military and was awaiting his assignment, but that it would likely result in his needing to move out of the Chicago area. The interstate study was subsequently postponed until father informed LCCS of his new residency. According to the record, it appears that father failed to contact LCCS. Rather, LCCS learned that father had been stationed in the state of Washington after father was pressured to provide his new address

12.

at a pretrial hearing in September. According to Vebenstad, LCCS requested an interstate home study pursuant to the Interstate Compact for Placement of Children, but the request was denied by the state of Washington based on its concerns of father's history of domestic violence. Father was subsequently referred for a domestic violence assessment and directed to complete domestic violence treatment if recommended. Father refused to undergo domestic violence assessment.

{¶ 27} In light of the foregoing, we find that the juvenile court's determination that the children could not or should not be placed with either parent within a reasonable time under R.C. 2151.414(E) was supported by clear and convincing evidence. Moreover, we find that that the juvenile court's findings concerning the children's best interests under R.C. 2151.414(D) was supported by the evidence, which demonstrates that the children's needs are being met in their current placements, an award of permanent custody would provide the children with a safe, stable and legally secure placement, there were no appropriate relatives that were willing and able to accept placement of the children, the children had been in substitute care for 22 months as of the date of the juvenile court's grant of permanent custody, and permanent custody was recommended by the children's guardian ad litem. Therefore, we find that the juvenile court's grant of LCCS's motion for permanent custody was not against the manifest weight of the evidence.

{¶ 28} Accordingly, appellate counsel's sole proposed assignment of error is not well-taken.

13.

{¶ 29} In father's sole assignment of error, he argues that he received ineffective assistance of counsel because counsel failed to assert the juvenile court's lack of personal jurisdiction at the outset of the permanent custody proceedings.

{¶ 30} In order to demonstrate ineffective assistance of counsel, father must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, he must show that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

{¶ 31} At oral argument, father's counsel acknowledged that father waived the issue of personal jurisdiction by arguing the merits of the permanent custody proceeding and appearing multiple times before the court without asserting the court's lack of personal jurisdiction. Nonetheless, father argues that his trial counsel should have raised the personal jurisdiction issue at the outset because father did not reside in Ohio and did not have the requisite minimum contacts with Ohio in order to make him subject to Ohio tribunals. In support of his argument, father cites several personal jurisdiction statutes and rules, including R.C. 2307.382, which lists several bases for personal jurisdiction that are not applicable in this case. However, father fails to cite the relevant statute in this case, R.C. 3127.15, which provides, in relevant part:

14.

(A) Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

* * *

(B) Division (A) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(C) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

{¶ 32} By father's own admission, Ohio is the children's home state, as it is the state in which the children resided with mother for a period of at least six consecutive months immediately preceding the commencement of these proceedings. *See* R.C. 3127.01(B)(7). Moreover, proceedings for the termination of parental rights fall within the statutory definition of "child custody proceeding" under R.C. 3127.01(B)(4). Additionally, the record reveals that this is the first child custody determination concerning the children, thereby rendering it the "initial determination" under R.C. 3127.01(B)(8). Therefore, we find that the juvenile court clearly possessed jurisdiction to

15.

terminate father's parental rights in this case. Father's minimum contact argument is irrelevant in this case because personal jurisdiction is not required to make a child custody determination. R.C. 3127.15(C). *See O'Keefe v. O'Keefe*, 10th Dist. Franklin No. 86AP-135, 1986 Ohio App. LEXIS 7328, *11-12 (June 26, 1986) (finding the minimum contacts test inapplicable to custody matters).[2]

{¶ 33} Accordingly, father's sole assignment of error is not well-taken.

{¶ 34} This court has thoroughly reviewed the record of proceedings in the trial court, including the trial testimony and exhibits. Upon our own independent review of the record, we find no grounds for a meritorious appeal. Thus, this appeal is found to be without merit and is wholly frivolous. Appointed counsel's motion to withdraw is found well-taken and is hereby granted.

---

[2] At oral argument, father's counsel argued that R.C. 3127.15 is unconstitutional insofar as it allows a court to proceed against a party without sufficient minimum contacts for in personam jurisdiction. This argument was not raised in father's brief to this court. Although the constitutionality of R.C. 3127.15 has not been directly addressed in this state, other states have addressed similar statutory provisions and held that an exception to the requirement of minimum contacts for personal jurisdiction applies to child custody cases because such cases involve the determination of status. *See In re Thomas T.R.*, 262 Wis.2d 217, 233-237, 663 N.W.2d 734 (2003) (examining the cases that have considered the present constitutional issue and joining the "many states" that have applied the status exception to the general personal jurisdiction requirements).

### III. Conclusion

{¶ 35} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____

JUDGE

Arlene Singer, J.       

_____

James D. Jensen, P.J.       JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.