[Cite as *In re Y.W.*, 2018-Ohio-325.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Y.W., J.W., T.W.                    Court of Appeals Nos. L-17-1215

                                         Trial Court No. JC 15250150

                                         **DECISION AND JUDGMENT**

                                         Decided:  January 26, 2018

* * * * *

Laurel A. Kendall, for appellant.

Jill E. Wolff, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant-mother to the subject minor children, Y.W., J.W., and T.W., and granted permanent custody to appellee, Lucas County Children Services Board.  For the reasons set forth below, this court affirms the judgment of the juvenile court.

{¶ 2} The following facts are relevant to this appeal. Because none of the fathers of Y.W., J.W., and T.W. are parties to this appeal, we limit our discussion to the juvenile court's findings as they relate to appellant-mother.

{¶ 3} On September 14, 2015, appellee filed a complaint in dependency, neglect, and abuse and a motion for shelter care hearing, regarding the subject children. Toledo police observed appellant's suspicious driving on September 12, 2015, when she was swerving and unable to maintain control of the vehicle. Toledo police stopped the vehicle and observed appellant intoxicated and unable to answer basic questions about her three children in the car with her. Appellant had slurred speech, bloodshot and glassy eyes, a strong scent of intoxicating beverages, and told police she had been drinking. Toledo police arrested appellant for operating a vehicle under the influence of alcohol or drugs, reckless operation, and child endangerment. Toledo police referred Y.W., J.W., and T.W. to appellee for safe keeping while appellant was processed. During processing appellant told police she smoked marijuana while pregnant with T.W., who was a newborn. Within the past year appellee already temporarily removed Y.W. and J.W. from appellant's care due to issues that included appellant's substance abuse of alcohol. Following the September 14, 2015 shelter care hearing, appellee was awarded interim temporary custody of Y.W., J.W., and T.W.

{¶ 4} On October 15, 2015, following an adjudicatory hearing, Y.W. and J.W. were each found to be a dependent and neglected child, and T.W was found to be a

2.

dependent, neglected, and abused child.  On that day appellee was awarded temporary custody of Y.W., J.W., and T.W.

{¶ 5} On July 18, 2016, appellee moved for permanent custody of Y.W., J.W., and T.W.  Appellant continued to be involved in the criminal justice system on a separate matter.  Subsequent to appellee's motion the guardian ad litem for Y.W., J.W., and T.W. filed a report recommending permanent custody to appellee and detailed the failed efforts to find a willing relative to take custody of the children.  The permanent custody adjudicatory hearing was held June 19 and 22, 2017.  Appellant arrived very late, thinking the hearing was the following day.

{¶ 6} On June 22, 2017, the juvenile court announced its decision.

> After taking into consideration all relevant testimony and evidence, the Court finds by clear and convincing evidence that despite reasonable efforts to prevent their continued removal from the parents, the children could not and should not return to their parents and it is in the best interest of the children to grant permanent custody to Lucas County Children Services. There have been reasonable efforts to reunify the children and Lucas County Children Services have made reasonable efforts to finalize the permanency plan.  I know you love your children very much, but they deserve permanency.  And if * * * you had made some significant, consistent progress in your case plan and having a relationship with the

3.

children, we may be in a different position, but the evidence didn't show that. So that is my decision today.

{¶ 7} By judgment entry journalized August 1, 2017, the juvenile court made a number of relevant findings to this appeal.

{¶ 8} Pursuant to R.C. 2151.353(A)(4), and R.C. 2151.414(E)(1), (2), (4), (10), (11) and (16) by clear and convincing evidence the juvenile court found Y.W., J.W., and T.W "cannot and should not be placed with [appellant] within a reasonable time."

{¶ 9} Pursuant to R.C. 2151.414(D)(1) by clear and convincing evidence the juvenile court found an award of permanent custody to appellee is in the best interests of Y.W., J.W., and T.W. The juvenile court determined the children "are very bonded to each other"; "have some special needs that are being addressed in services"; "are all doing well in their foster placements"; and permanent custody to appellee was recommended in the best interest of the children by the guardian ad litem, the caseworker of record, and the previous caseworker.

{¶ 10} Pursuant to R.C. 2151.414(B)(1) by clear and convincing evidence the juvenile court further found Y.W., J.W., and T.W., who were of tender age, had been in temporary custody of appellee for 21 months of a consecutive 22 month period.

{¶ 11} Pursuant to R.C. 2151.419 the juvenile court found appellee "made reasonable efforts to prevent the need for removal of the children, and the continued need for removal from their home, however, such efforts were unsuccessful. Said efforts included case plan management, visitation, [and] referrals to assessments, mental health

4.

treatment, substance abuse treatment, Lucas County Family Drug Court, Anger Management services, P.C.I.T. [parent, child interactive therapy], [and] parenting classes. The Court finds that although these services were offered, the conditions that caused the initial removal of the children from [appellant's] care have not been remedied and the children cannot be returned to [appellant] within a reasonable period of time."

{¶ 12} Pursuant to R.C. 2151.414(E)(1) the juvenile court found the conditions that caused the initial removal of the children from the appellant's care included appellant's mental health and substance abuse, housing, ongoing criminal concerns, and parenting concerns. "These concerns still exist today."

{¶ 13} Pursuant to R.C. 2151.414(E)(2) the juvenile court found appellant "has chronic mental health and substance abuse issues that make her unable to parent now or as anticipated one year after the permanent custody trial." Appellant was diagnosed with "Unspecified Bipolar Disorder, PTSD, Cannabis use disorder, Persistent Depressive Disorder and Alcohol Use Disorder." She did not successfully complete her treatments, continued to test positive for alcohol as recently as a month prior to the hearing, and did not take her prescribed medication.

{¶ 14} Pursuant to R.C. 2151.414(E)(4) the juvenile court found that appellant has "shown a lack of commitment towards these children. Mother has missed weeks at a time of visitation. * * * Mother had not presented any evidence that she can currently provide a safe, stable home for these children. She still has substance abuse and mental

health issues that have not been treated. She has not successfully passed a parenting class."

{¶ 15} Pursuant to R.C. 2151.414(E)(11) the juvenile court found "that mother has previously lost permanent custody of a sibling to these children and she has not shown that she can provide a safe stable home at the current time. * * * She still has substance abuse and mental health issues that have not been treated. She has not successfully passed a parenting class."

{¶ 16} It is from the juvenile court's August 1, 2017 journalized judgment entry which appellant-mother filed her appeal on August 28, 2017, and amended on September 5, 2017.

{¶ 17} Appellant sets forth two assignments of error:

I. The juvenile court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as it was against the manifest weight of the evidence.

II. Appellant received ineffective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

## I. Manifest Weight of the Evidence

{¶ 18} In support of her first assignment of error, appellant argues that her "employment, if sporadic; her stable housing; and her medical condition of sickle cell anemia, taken together, overcame the concerns expressed by the agency as to [her]

6.

inconsistent participation in parenting services and occasional missed visits." Appellant argues that since she was employed full-time at the time of trial, "[t]his court should find that full-time employment could also be a bar to completion of services, but that employment is necessary to obtaining and/or providing stable housing for children." Appellant further argues that agency services "are only available during traditional working hours [and] will always conflict with an agency directive to obtain employment and/or stable housing." Finally, appellant argues that her sickle cell anemia contributed to her inability to attend visits with the children.

{¶ 19} Appellee argues in response the juvenile court's decision was not against the manifest weight of the evidence. The evidence supported each of the juvenile court's findings stated in its judgment entry.

{¶ 20} We must affirm a juvenile court's determination in a permanent custody case unless it is against the manifest weight of the evidence. *In re A.A.*, 6th Dist. Lucas No. L-17-1162, 2017-Ohio-8705, ¶ 18. "A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the judgment than not." *Flowers v. Siefer*, 6th Dist. Lucas No. L-16-1002, 2017-Ohio-1310, ¶ 94. In determining whether a permanent custody judgment is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether the trier of fact clearly lost its way to create such a manifest miscarriage of justice as to reverse the judgment. *In re A.A.* at ¶ 18. In a permanent custody case the juvenile court

7.

is the trier of fact and is in the best position to weigh evidence and evaluate testimony. *Id.* The juvenile court's discretion in determining the best interests of Y.W., J.W., and T.W. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact on the lives of the parties concerned. *Id.*

{¶ 21} Despite appellant's assertion that full-time employment prohibits her case plan compliance, our review of the record indicates appellant's sporadic visitations and receipt of treatment services were not limited to her brief periods of employment. Nor were they the sole concerns articulated by the juvenile court when it reached its decision.

{¶ 22} Prior to terminating appellant's parental rights and granting permanent custody of Y.W., J.W., and T.W. to appellee pursuant to R.C. 2151.353(A)(4), the juvenile court must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *In re B.K.*, 6th Dist. Lucas No. L-17-1082, 2017-Ohio-7773, ¶ 16; R.C. 2151.414(B)(1) and (2).

{¶ 23} "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re T.S.*, 6th Dist. Wood No. WD-16-016, 2016-Ohio-5273, ¶ 17. It is

8.

more than a preponderance of evidence but less than beyond a reasonable doubt. *In re Kh.M.*, 6th Dist. Lucas Nos. L-16-1199, L-16-1223, 2017-Ohio-8706, ¶ 21.

{¶ 24} The following statutes are relevant to this appeal.

{¶ 25} R.C. 2151.353(A)(4) states:

If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * (4) Commit the child to the permanent custody of a public children services agency * * *, if the court determines in accordance with [R.C. 2151.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with [R.C. 2151.414(D)(1)] that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.

{¶ 26} We find the record contains ample evidence showing the juvenile court complied with the requirements of R.C. 2151.353(A)(4).

{¶ 27} R.C. 2151.414(E)(1) states:

In determining at a hearing held * * * for the purposes of [R.C. 2151.353(A)(4)] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the

court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held * * * for the purposes of [R.C. 2151.353(A)(4)] that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 28} We find the record contains the clear and convincing evidence supporting the juvenile court's findings pursuant to R.C. 2151.414(E)(1). In 2012 appellee was involved with Y.W. because appellant had mental health and substance abuse issues and lacked support with the newborn, Y.W. In 2014 appellee was involved with Y.W. and

10.

J.W. because appellant had, again, mental health and substance abuse issues and lacked adequate housing conditions and parenting skills with the newborn, J.W, and Y.W. In 2014 appellee again was involved with J.W. because appellant was intoxicated and J.W. was punched in the head, fell backwards, hit her head, and rushed to the emergency room. Appellant received substance abuse treatment, mental health services, parenting classes and housing services and was reunified with Y.W. and J.W. in January, 2015.

{¶ 29} In the current matter, by September 2015 appellee was again involved with Y.W. and J.W., plus the newborn, T.W., because the police found appellant was driving intoxicated and incoherent. Once again appellant's case plan included substance abuse treatment, mental health services, parenting classes and housing services. Appellant admitted during the hearing she was non-compliant with her treatments and medications and had tested positive for alcohol as recently as May 2017, though she claimed her sobriety date was April 22, 2017. The evidence is clear and convincing that appellant has failed continuously and repeatedly to substantially remedy the conditions initially causing her children to be placed outside the home.

{¶ 30} R.C. 2151.414(E)(2) continues: "(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * * for the purposes of [R.C. 2151.353(A)(4)]."

11.

{¶ 31} We find the record contains the clear and convincing evidence supporting the juvenile court's findings pursuant to R.C. 2151.414(E)(2). Appellant was diagnosed with borderline intellectual functioning, PTSD, bipolar, depression, expressive language disorder, and alcohol substance abuse. She failed Drug Court. She failed an alcohol screen in May 2017, which she disputes. She appeared at Unison, a service provider, on May 22, 2017, intoxicated. She failed to take her prescribed medication for depression. Her explanation at the hearing was simply, "I started getting better facing the fact that I put my kids in danger. I stopped taking my medicine." She failed P.C.I.T.

{¶ 32} Appellant was arrested in December 2016 for an alcohol-related incident at a carryout unrelated to this matter. She did not have housing until April 2017. She had only sporadic employment for two to three weeks at a time until the hearing when appellant testified she had been employed for a month or so. Appellant was late to the hearing thinking it was the following day, even though appellant promised she would keep a calendar to better track appointments and court dates.

{¶ 33} Lapses in receiving services, tracking the services her children were receiving, or her visitations were not associated by appellant with her sickle cell anemia until the permanent custody hearing. The record shows her sickle cell anemia diagnosis was self-identified by appellant at the hearing. She provided no testimony, whether on direct or cross-examination, to associate her sickle cell anemia with, for example, any particular absence from a treatment service or visitation or failure to take her medications. The evidence is clear and convincing appellant has for many years chronic

12.

mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency that is so severe that it makes the parent unable to provide an adequate permanent home for the children in the time required by law.

{¶ 34} R.C. 2151.414(E)(4) continues: "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

{¶ 35} We find the record contains the clear and convincing evidence supporting the juvenile court's findings pursuant to R.C. 2151.414(E)(4). Appellant was scheduled to visit her children twice a week, and her compliance rate was 50-63%. Appellant showed up intoxicated at Unison, a service provider, on May 22, 2017, who reported it her current caseworker. Appellant's parenting skills remained an issue because she missed three out of five of her parenting classes and did not successfully complete the service. She did not have confirmed independent housing as of May 5, 2017, although appellant testified she had stable housing in April 2017. Appellant was non-compliant in each of the areas of case plan services she required.

{¶ 36} The former caseworker testified she observed a distinct lack of interest by appellant towards her children. Both Y.W. and J.W. receive special needs services through school; Y.W. for cognitive and speech delays and occupational therapy and J.W. for possible autism. Appellant wasn't interested once she got the children back [in 2015] to make sure she got the children to their services "and help the child after the hour of

13.

speech therapy on a regular basis at home to keep those skills going." She testified there was a chronic lack of progress:

A: Well, the lack of consistency in mom's services. The lack of progress. She's still not able to verbalize why the children came into custody this time [September 2015] with her drinking and driving. The lack of just her visits have been real sporadic. There was a point in time a couple of months when she barely made 50 percent of her visits, and that really upset the children, and mom didn't understand why – why that would upset the children. I also tried to get her to interact a lot more hands-on with the children. I bought [sic] her a bag with a bunch of activities for [Y.W.] and [J.W.] to use. Like, for example, tracing shapes, tracing letters. Neither child can print a single letter to spell their name. And those were the kinds of things that I tried to get her involved in and she didn't see the importance of it. And second of all, she just – she didn't do it when she was in visits with the children.

Q: What did she do in visits?

A: Well, if she brought food, she fed them. If she didn't bring food, then she would ask our staff for food to feed the children.

Q: And did you observe visits with her?

A: The majority of the time, yes.

Q: And how was her interaction with the children?

A: The youngest one [T.W.] pretty much was strapped in a carrier. Virtually no interaction with that child at all. [Y.W.] who really, really wanted mom's attention, she's a very needy child, was kind of brushed off to take care of [J.W.].

Q: And did you discuss these issues with mom?

A: Repeatedly.

Q: And what would she tell you?

A: She just didn't see what I was seeing.

Q: Did that concern you?

A: Yes, it did.

Q: And what about it concerned you?

A: Well, again, her lack of hands-on, her lack of interaction with her children, asking about homework, trying to help them with homework, trying to help them improve their hand-eye coordination. They're both in occupational therapy. But she just – she just didn't see why those things were important.

{¶ 37} At the hearing, appellant testified that she believed only one of her children, Y.W., has special needs.

Q: And what are those needs?

A: She have [sic] a speech problem. She got a piece of bullet stuck in her back and she have [sic] a mild hearing loss.

Court: Pardon?  She has a ---

A: She has a mild hearing loss.

{¶ 38} The evidence is clear and convincing appellant has demonstrated a lack of commitment toward her children by failing to regularly support, visit, or communicate with them when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for them.

{¶ 39} R.C. 2151.414(E)(11) continues with a burden shift to the appellant:  "(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the [children] * * * under an existing or former law of this state, * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the [children]."

{¶ 40} We find the record contains the clear and convincing evidence supporting the juvenile court's findings pursuant to R.C. 2151.414(E)(11).  It is undisputed in 2010 appellant, while she was a minor, gave birth to a son, D.W., and because of her inability to care for D.W., the child was permanently removed from her custody.  D.W. is a sibling to Y.W., J.W. and T.W.

{¶ 41} In turn, appellant failed to meet her clear and convincing burden that, notwithstanding the prior termination of parental rights to D.W., she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of Y.W., J.W. and T.W.  As previously indicated, appellant demonstrated a significant lack

16.

of progress in the treatment of her substance abuse and mental health issues. At the time of the hearing, appellant wasn't actively in any services and was unsuccessfully discharged from all services she started. Appellant testified she had been sober since April 22, 2017. However, there was evidence of a failed alcohol screen in May, 2017, and of appellant's intoxication on May 22, 2017 when she arrived at Unison.

{¶ 42} Appellant testified that her sickle cell anemia makes her blood drop causing her to get "weak and dizzy." Appellant argues her sickle cell anemia is a cause of her unsuccessful treatment services and lack of visitations. However, appellant also argues employment is a cause. Moreover, appellant testified at the hearing a main cause for her non-compliance is transportation to the service providers or to the visitations. Her bus tokens ran out, and she failed to notify her caseworker to get her more. Appellant also testified another main cause is because she simply forgets.

> Q: Can you tell the Court why they may be concerned [regarding your commitment to these case plan services]?
>
> A: They're probably concerned because, like, half the time I get in my classes and then I be [sic] continuing to do it and then I stop all of a sudden. Like, I miss my appointments with no calls and no shows. So half the time I forget.

{¶ 43} The record shows appellant failed to meet her clear and convincing evidence burden to demonstrate she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of Y.W., J.W. and T.W.

17.

{¶ 44} We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of Y.W., J.W. and T.W.

{¶ 45} Appellant's first assignment of error is not well-taken.

## II. Ineffective Assistance of Counsel

{¶ 46} In support of her second assignment of error, appellant argues she received ineffective assistance of counsel because "her trial attorney did not introduce any medical records corroborating her diagnosis, treatments, etc." of her sickle cell anemia. Appellant argues her inconsistent performance as to case plan services was due to her sickle cell anemia, which caused her to be weak, dizzy and inactive. Consequently, appellant argues "there was a reasonable probability that the introduction of medical records of [her] sickle cell anemia would have influenced the outcome of this matter."

{¶ 47} Appellee argues in response that appellant was not denied effective assistance of counsel because the presentation of evidence is a tactical decision. Appellee argues appellant's trial counsel participated "actively and competently throughout the case" and cross-examined each witness at the permanent custody hearing. Appellee further argues the record shows appellant testified on her own behalf as to her medical condition.

{¶ 48} An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Roberson*, 6th

18.

Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 95. The record does not show appellant questions the licensure of her attorney, so the attorney's competence is presumed.

{¶ 49} To overcome this presumption of competence, appellant has the burden in an ineffective assistance of counsel claim to show both deficient performance by her attorney below an objective standard of reasonable representation and a reasonable probability of prejudice that but for her attorney's errors, the juvenile court could not have reached its judgment on permanent custody. *Id.*

{¶ 50} "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Evidence introduced through appellant's testimony regarding her sickle cell anemia on direct and cross-examination was reasonable at the time appellant's attorney made decisions regarding such evidence. *Id.* We find that the record shows no errors by appellant's attorney so serious as to deprive appellant of a fair proceeding and to render the juvenile court's judgment on permanent custody unreliable. *Id.* at 84. The record reflects ample evidence presented to the juvenile court unrelated to appellant's sickle cell anemia with which to support the judgment regarding permanent custody of Y.W., J.W. and T.W. We find appellant failed to meet her burden in an ineffective assistance of counsel claim.

{¶ 51} Appellant's second assignment of error is not well-taken.

{¶ 52} On consideration whereof, we find the judgment of the juvenile court terminating appellant's parental rights and granting permanent custody of Y.W., J.W. and

19.

T.W. to appellee was supported by clear and convincing evidence. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                 _____
JUDGE

Thomas J. Osowik, J.         

_____

Christine E. Mayle, P.J.         JUDGE
CONCUR.

_____
JUDGE